## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 13 2020, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle Sheff
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:
CHILD ADVOCATES, INC.

Dede Kristine Connor
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of S.G-A., (Minor Child), Child in Need of Services, | November 13, 2020 |
| and | Court of Appeals Case No. 20A-JC-1084 |
| L.A-V. (Mother), | Appeal from the Marion Superior Court |
| *Appellant-Respondent,* | The Honorable Marilyn Moores, Judge |
| v. | The Honorable Danielle Gaughan, Magistrate |

| The Indiana Department of Child Services,<br>*Appellee-Petitioner,*<br><br>and<br><br>Child Advocates, Inc.,<br>*Guardian ad Litem.* | Trial Court Cause No.<br>49D09-1908-JC-2189 |
| --- | --- |

**Tavitas, Judge.**

# Case Summary

[1] L.A-V. ("Mother") challenges the juvenile court's conclusion that her child, S.G-A., is a child in need of services ("CHINS"). We affirm.

# Issue

[2] Mother raises one issue, which we restate as whether there was sufficient evidence to find that S.G-A. is a CHINS.

# Facts

[3] S.G-A. was born May 22, 2019, to Mother and J.G. ("Father"). Mother also has two other minor children—D.R. Jr. and Da.R.—whose father is D.R. D.R. Jr. and Da.R were the subject of a prior Marion County Office of the Indiana Department of Child Services ("DCS") CHINS case in 2012. In that case, DCS alleged that multiple witnesses reported that Mother "hallucinate[d], [had] bouts of paranoia, and talk[ed] about prostituting herself for money." Ex. at 5.

D.R. Jr. and Da.R were adjudicated as CHINS. Mother and D.R. participated in services, and D.R. Jr. and Da.R were eventually reunited with Mother and D.R. Mother and D.R. later separated, and D.R. moved to Florida.

[4] On August 23, 2019, both Mother and Father took S.G-A.—then three months old—to Peyton Manning's Children's Hospital. Dr. Cortney Demetris, a member of the Child Abuse Pediatrics Department, concluded that S.G-A. had several injuries, including a subconjunctival hemorrhage, a broken right femur, a fractured left femur ("corner fractures"), and several fractured ribs. The subconjunctival hemorrhage, which is essentially a bruising of the white of the eyeball, apparently predated the other injuries, a fact that Mother relayed to Dr. Demetris. Dr. Demetris surmised that the eye bruising was, more likely than not, the result of a separately inflicted injury and that the only possible explanations for its cause were direct trauma to the eye or compression of the chest. Dr. Demetris opined that S.G-A. sustained injuries on at least two occasions.

[5] Dr. Demetris further concluded that the rib fractures were the result of trauma resulting from force "in excess of any . . . normal infant handling." Tr. Vol. II p. 14. Additionally, Dr. Demetris determined that the rib fracture must have been a result of a "compression of the chest to the point where that back part of the rib is pushing so hard on the part . . . of the backbone that it breaks the rib." *Id*. at 38. Finally, Dr. Demetris concluded that the break in the right femur was a result of a direct impact, and that the left femur corner fractures, which rarely result from accidental or natural causes, were a result of yanking, pulling, or

jerking forcibly enough to break the newly forming bone at the end of the femur. According to Dr. Demetris, all of the injuries were "non-accidental." *Id*. at 25.

[6] Mother was unable to explain how the injuries occurred. Mother recounted to Dr. Demetris an incident during which Mother turned around in a car seat while holding S.G-A., resulting in Mother pressing him against a portion of the car interior. Dr. Demetris concluded that such an event could not plausibly have caused S.G-A.'s injuries. Mother, for whom English is not her native language, appeared to express skepticism about the extent of S.G-A.'s injuries. Mother also admitted to suffering from mental health issues. Mother's treatment team diagnosed Mother with "Adjustment Disorder with mixed depressed [sic] and anxiousness" in addition to noting a history of post-traumatic stress disorder and bi-polar disorder. Tr. Vol. II p. 131.

[7] Father initially claimed that he did not know what caused S.G-A.'s injuries. Father subsequently told law enforcement that he sat on S.G-A.'s leg, but also, that he caused the injuries while jumping on the bed as S.G-A. lay there. Dr. Demetris concluded that Father's accounts were not plausible explanations of the cause of S.G-A.'s injuries. Criminal charges were subsequently filed against Father due to S.G-A.'s injuries, and a no-contact order was issued.

[8] On August 27, 2019, DCS filed a CHINS petition regarding S.G-A., D.R. Jr., and Da.R., which alleged that Mother "failed to provide the children with a safe, stable, and appropriate living environment free from substance abuse and

physical abuse." Appellant's App. Vol. II p. 27. The CHINS petition further alleged Mother: "is diagnosed with bipolar disorder and admitted to not currently receiving treatment," and that, despite past services offered, Mother "continues to demonstrate an inability to provide the children with a safe, stable home." *Id.* at 27. DCS alleged the children to be CHINS under three different statutes: Indiana Code Section 31-34-1-1, Indiana Code Section 31-34-1-2, and Indiana Code Section 31-34-12-4 ("presumption statute.").

[9] On March 9, 2020, the juvenile court held a CHINS fact-finding hearing. Dr. Demetris testified, as did several witnesses with information pertinent to Mother's mental health issues. Mother's former husband, D.R.,[1] described multiple manic episodes in which Mother acted like "a whole bunch of other people" instead of acting like herself and compared her actions to a scene from "The Exorcist." Tr. Vol. II p. 85. Multiple mental health professionals who previously worked with Mother recommended additional mental health treatment and parenting classes, and voiced concerns about the safety of the children in Mother's home. Mother reported some past traumatic experiences to her home-based therapist during a parenting assessment. A social worker from Eskenazi Mental Health testified that Mother desired additional treatment.

---

[1] Mother and D.R. were in the process of being divorced at the time of the fact-finding hearing.

[10] The juvenile court entered an order finding that D.R. Jr. and Da.R. were not CHINS and granted physical and legal custody of those children to D.R. The juvenile court, however, adjudicated S.G-A. a CHINS and found in part:

> 14. Mother has a history with the Department of Child Services as well as a history of mental health issues. At the time of the assessment, Mother admitted that she had previously been diagnosed bi-polar but was not on medication. At trial Mother stated that she receives social security because of a 2012 diagnosis of bi-polar and that she is taking medication for anxiety.
>
> * * * * *
>
> 16. [S.G-A.]'s physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of [S.G-A.]'s parents to supply the child with the necessary food, clothing[,] shelter, medical care, education or supervision. [S.G-A.] was severely injured while in the care of his parents and his injuries have been determined to be non-accidental. [S.G-A.] had a subconjunctival hemorrhage, a broken right femur, a corner fractures [sic] to his left femur, fractured ribs, and his eighth rib was broken. [Father] has waived his right to fact finding, was arrested as a result of the injuries to [S.G-A.] and criminal charges are currently pending. Mother has made different statements to explain [S.G-A.]'s injuries, none of which were plausible.
>
> 17. [S.G-A.]'s physical or mental health is seriously endangered due to injury by the act or omission of [S.G-A.]'s parent. The injuries to [S.G-A.] were severe and occurred while in the care of both Mother and [Father]. The injuries have been determined to have occurred on two separate occasions; [Father] is incarcerated pending criminal charges because of [S.G-A.]'s injuries and

Mother has offered no plausible explanation for how the injuries occurred.

18. Pursuant to I.C. 31-34-12-4, a rebuttable presumption is raised that a child is in need of services because of an act or omission of the child's parent if the state introduces competent evidence of probative value that the child has been injured; at the time the child was injured, the parent had the care, custody, or control of the child; the injury would not ordinarily be sustained except for the act or omission of the parent; and there is a reasonable probability that the injury was not accidental. Mother did not present sufficient evidence to refute the rebuttable presumption raised by DCS. The severe injury to [S.G-A.] occurred while [S.G-A.] was in care of mother and father and the [sic] would not have been sustained except for the act or omission of the parents. [Father] is currently incarcerated pending criminal charges because of [S.G-A.]'s injuries and Mother has offered no plausible explanation for how the injuries occurred. The injuries have been determined to be non-accidental.

Appellant's App. Vol. II pp. 150-51.

[11]   The juvenile court held a dispositional hearing, March 9, 2020, and finalized its order on May 12, 2020. The juvenile court found that it would be in the best interests of S.G-A. to continue to be removed from Mother's home, that the allegations in the CHINS petition were true, and that reasonable services were being offered. Mother now appeals.

# Analysis

[12]   Mother argues that there was insufficient evidence to establish S.G-A. as a CHINS. "'[CHINS] cases aim to help families in crisis—to protect children,

not punish parents.'" *Matter of A.R.*, 110 N.E.3d 387, 400 (Ind. Ct. App. 2018) (quoting *In re S.D.*, 2 N.E.3d 1283, 1285 (Ind. 2014)). "When determining whether there is sufficient evidence to support a CHINS determination, we neither reweigh the evidence nor judge the credibility of the witnesses." *Id.* (citing *S.D.*, 2 N.E.3d at 1287). "We consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom." *Id.* Because neither party filed a written request for findings of fact and conclusions thereon regarding this issue, the trial court's findings of fact are controlling only as to issues they cover. *In re Adoption of I.B.*, 32 N.E.3d 1164, 1169 (Ind. 2015). "We limit our review of those matters to whether the evidence supports the findings and then whether the findings support the judgment, reversing the findings only if they are clearly erroneous." *Id.* "On all other matters, the general-judgment standard applies, and we will affirm on any legal theory supported by the evidence." [2] *Id.* The trial court's conclusions of law and any constitutional challenges are reviewed de novo. *Id.*

[13] A CHINS proceeding is civil in nature, so the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2017).

> There are three basic elements DCS must prove for a juvenile
> court to adjudicate a child a CHINS: that the child is under

[2] The juvenile court's finding in the instant case covered all the issues required for a CHINS determination. As such, the general judgment standard has no functional effect, and we decline to reach Mother's argument that the standard is unconstitutional.

eighteen years of age; one or more of the statutory circumstances outlined in Indiana Code sections 31-34-1-1 through 11 exists; and the care, treatment, or rehabilitation required to address those circumstances is unlikely to be provided or accepted without the coercive intervention of the court.

*Matter of K.Y.*, 145 N.E.3d 854, 860 (Ind. Ct. App. 2020) (citing *N.E.,* 919 N.E.2d at 105), *trans. denied.* In this case, DCS alleged that S.G-A. was a CHINS pursuant to Indiana Code Sections 31-34-1-1 and 31-34-1-2.

[14] To meet its burden under Section 31-34-1-1, DCS was required to prove that S.G-A. is under the age of eighteen, and:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without coercive intervention of the court.

Ind. Code § 31-34-1-1.

[15] DCS also alleged that S.G-A. was a CHINS pursuant to Indiana Code Section 31-34-1-2, which requires the State prove a child is under the age of eighteen, and:

(1) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian; and

(2) the child needs care, treatment, or rehabilitation that:

    (A) the child is not receiving; and

    (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[16] DCS, however, also alleged that the presumption statute applied in this case, whereby:

. . . the child is a child in need of services because of an act or omission of the child's parent, guardian, or custodian if the state introduces competent evidence of probative value that:

(1) the child has been injured;

(2) at the time the child was injured, the parent, guardian, or custodian:

    (A) had the care, custody, or control of the child; or

    (B) had legal responsibility for the care, custody, or control of the child;

(3) the injury would not ordinarily be sustained except for the act or omission of a parent, guardian, or custodian; and

(4) there is a reasonable probability that the injury was not accidental.

Ind. Code § 31-34-12-4.

[17] "Once this showing is made, the rebuttable presumption that a child is a CHINS applies to all the statutory CHINS elements in chapter 1, including the 'coercive intervention' element." *K.Y.*, 145 N.E.3d at 861 (citing *Ind. Dep't of Child Servs. v. J.D.*, 77 N.E.3d 801, 809 n.3 (Ind. Ct. App. 2017), *trans. denied*). DCS "'need only produce some relevant and admissible evidence tending to establish the elements of the Presumption Statute in order to shift the burden of production'" to Mother. *Id.* at 862 (quoting *J.D.*, 77 N.E.3d at 809).

[18] Mother openly admitted that "the hospital, DCS, and IMPD witnesses identified serious injuries to S.G-A.," Appellant's Br. p. 30, thereby conceding that S.G-A. was injured. Mother does not challenge that, at the time of the injuries, S.G-A. was under the care, custody, and control of a parent. Neither does she challenge the obvious conclusions that "the injury would not ordinarily be sustained except for the act or omission of a parent . . . and there is a reasonable probability that the injury was not accidental." Ind. Code § 31-34-12-4. The evidence, therefore, gave rise to the rebuttable presumption that S.G-A. was a CHINS.

[19] The crux of Mother's argument is that there was no causal connection established between the acts or omissions of Mother and the harm suffered by the child, and that this connection is required. Notwithstanding the fact that

this argument does not overcome the presumption, and fails to even address the presumption statute, the fact that there is no causal connection between Mother and S.G-A.'s injuries is of no consequence.

[20] CHINS determinations are not made with respect to a particular parent. They are a declaration of status. This issue has already been squarely decided by our Supreme Court. *See N.E.*, 919 N.E.2d at 105. A CHINS adjudication is not a matter of parental culpability. Rather, "the truth of the matter is that a CHINS adjudication is simply that—a determination that a child is in need of services." *Id*. The focus is on the condition of the child, regardless of whether the condition has been caused by one or both parents, or arises from no fault of their own.[3] *S.D.*, 2 N.E.3d at 1285 ("Our focus, then, is on the best interests of the *child* and whether the child needs help that the parent will not be willing or able to provide—not whether the *parent* is somehow 'guilty' or 'deserves' a CHINS adjudication.") (emphasis in original).

[21] We note that, here, the severe injuries inflicted on S.G-A.—including a broken femur—satisfy the statutory requirement that "the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent . . . ." Ind. Code § 31-34-1-2. Whether the trial court concluded that the injuries were a direct cause of Father's intentional acts, were caused by Mother's neglect or inability to protect her child, or a combination of both, is of

---

[3] We note that here, the evidence strongly suggests that S.G.'s injuries *were* caused by a parent. Regardless, CHINS adjudications are not made against one parent or another.

no moment. The bottom line is that S.G-A. is in need of services, and Mother offers no evidence to rebut that presumption. Mother was either unable or unwilling to protect S.G-A. from serious injuries occurring on multiple occasions; Mother even expressed skepticism that—despite a broken femur—S.G-A. was ever injured.

[22] Even if the evidence did not establish the presumption, or the presumption had been effectively rebutted, we would still find sufficient evidence that S.G-A. was a CHINS. The aim of a CHINS inquiry is to determine if a child's circumstances require services that are unlikely to be provided absent court intervention. *Matter of E.Y.*, 126 N.E.3d 872, 877 (Ind. Ct. App. 2019) (citing *S.D.*, 2 N.E.3d at 1287). Mother argues that the CHINS order is devoid of evidence that the situation would not be remedied without the coercive intervention of the Court." Appellant's Br. p. 27. We disagree.

[23] The record reflects that, while Mother's struggles with mental health issues have been consistent, her utilization of mental health services has not been. Multiple witnesses recommended continued or increased treatment for Mother, and multiple witnesses expressed concerns for the safety of children in Mother's home. S.G-A.'s injuries were severe and occurred on more than one occasion. Mother's history with DCS and her reluctance to consistently accept necessary mental health treatment clearly evidence that coercive intervention by the court is required. Ultimately, Mother was either unable or unwilling to protect S.G-A., and it was, therefore, not clear error to declare S.G-A. a CHINS.

Given that Mother either conceded or failed to contest each of the elements of the presumption statute, we cannot conclude that the juvenile court erred when it adjudicated S.G-A. a CHINS.[4]

# Conclusion

There was sufficient evidence to find S.G-A. to be a CHINS. Accordingly, we affirm.

Affirmed.

Kirsch, J., and Pyle, J., concur.

---

[4] Mother also seems to argue that, because there was no evidence to support the CHINS determination, Mother's due process rights were violated. We have concluded there was sufficient evidence to support the CHINS finding. To the extent that Mother raises arguments concerning the Due Process Clause of the United States Constitution and the Due Course of Law Clause of the Indiana Constitution, those arguments are waived for failing to be cogent. *Martin v. Hunt*, 130 N.E.3d 135, 137 (Ind. Ct. App. 2019) ("Failure to present a cogent argument results in waiver of the issue on appeal.") (citing *Hollowell v. State*, 707 N.E.2d 1014, 1025 (Ind. Ct. App. 1999)).